## **NEGOTIATED SETTLEMENT AGREEMENT**

*WHEREAS*, Ramsaran Seecharan ("Seecharan") and Heritage Place LLC ("The Company"), desire to resolve this matter without further litigation or adjudication and the costs and expenses attendant thereto; and

NOW, THEREFORE, IT IS STIPULATED AND AGREED BY AND BETWEEN THE PARTIES THAT SEECHARAN HAS ASSERTED A CLAIM FOR AGE DISCRIMINATION INDEPENDENT AND SEPARATE FROM HIS WAGE-HOUR CLAIMS ASSERTED IN THE LITIGATION DESCRIBED BELOW AND:

1. In exchange for the promises made by The Company in Paragraph "2" below and in the other provisions of this Agreement, Seecharan agrees as follows:

    (a) Seecharan shall execute and deliver through counsel to The Company: (1) this Negotiated Settlement Agreement; and (2) the General Release attached hereto as Exhibit "A;"

    (b) Seecharan affirms that he has not instituted any complaint, suit, action, charge or other legal proceeding against The Company or any Releasees identified in this Agreement that currently is pending, except for the litigation filed in the United States District Court for the Eastern District of New York, Case No. 1:20-cv-03898-WFK-LB (the "Litigation"). In the event that any such action is brought other than the Litigation, Seecharan shall withdraw, in writing and with prejudice, all such charges, complaints, suits, actions, allegations, claims, demands and/or other legal proceedings. If for any reason any other complaint, suit, action, charge, claim or other legal proceeding Seecharan has instituted against The Company and/or any Releasees (identified herein) is not wholly and finally dismissed with prejudice, Seecharan shall not, to the extent permitted by law, voluntarily testify, provide documents or otherwise participate, or permit others to participate on his behalf, in any such litigation, investigation or other proceeding arising therefrom or associated therewith, and shall not obtain or accept any recovery or relief therefrom;

    (c) Except as may be prohibited by applicable law, Seecharan shall not institute or be represented in, nor shall he submit or file, or permit to be submitted or filed on his behalf, any lawsuit, charge, claim, complaint or other legal action or proceeding against The Company or any of the aforementioned entities' or individual's parent corporations, subsidiaries, divisions, affiliates and insurers, and the current and former employees, officers, directors,

trustees, administrators, executors, agents, legal representatives, employee benefit plans, fiduciaries, shareholders, predecessors, successors and assigns of each, both individually and in their official capacities (collectively referred to herein as "Releasees"), based upon any conduct occurring up to and including the date Seecharan executes this Negotiated Settlement Agreement and the General Release attached hereto as Exhibit "A", whether an individual action or a class action, with any administrative agency, court or other forum, under any federal, state, city, local or other laws, rules, regulations, codes or guidelines. After consultation with counsel, Seecharan knowingly and voluntarily releases and forever discharges The Company from any and all claims, known or unknown, that he has or may have consistent with the terms of the General Release attached hereto as Exhibit "A;"

(d) The Nondisclosure Agreement signed by Seecharan is incorporated herein as Exhibit "B". As set forth in the Nondisclosure Agreement, Seecharan agrees not to disclose, publish, or publicize any information relating to the underlying facts and circumstances of the claims emanating from the Complaint, or any information relating to or arising from Seecharan's employment with The Company, including but not limited to any information regarding any current or former employees of The Company, as well as allegations of discrimination, and promises that neither he nor his representatives will disclose, publish, or publicize, either directly or indirectly, any such information to anyone, including but not limited to past, present, or future employees of The Company or to any person, firm, organization or entity of any and every type, public or private, or on any internet website, with the exception that disclosure is permitted to his spouse, attorney, accountant, or medical or counseling professionals, or as otherwise required by law. The Parties agree that nothing in this Agreement is intended to limit or prohibit, or shall be construed as limiting or prohibiting, either Party from providing information in response to a lawfully issued subpoena or otherwise complying with any legal requirement. The Parties further agree that the existence and substance of this Agreement also may be disclosed in any future proceeding between the Parties in order to enforce its terms;

(e) Seecharan agrees he will not in any manner disparage Releasees or make or solicit any comments, statements or the like in any form or to the media or to others that are derogatory or detrimental to its good name or business reputation. The Company's owners agree not to do or say anything, directly or indirectly, that disparages Seecharan. To the extent Seecharan directs an employment inquiry to the Company's Human Resources Department, the

2

<u>Company's Human Resources Department's designee shall state that in accordance with Company policy, it can only confirm Seecharan's last position held and dates of employment.</u> ~~and will issue to him a letter of recommendation as set forth in Exhibit "C"~~;

(f) Except as may be required by law or requested by the EEOC, Seecharan shall not, in any way, voluntarily assist any individual in commencing or prosecuting any action or proceeding against Releasees, including, but not limited to, any complaint and/or any lawsuit, counter-claim, or cross-claim in federal, state or local court, or arbitration proceeding, or in any way participate or cooperate in any such action or proceeding, unless he is subpoenaed to do so, and shall not accept any relief or recovery therefrom. This prohibition applies to every stage of any proceeding, including any charge, complaint, trial, pretrial preparation, pre-litigation fact gathering, and bars Seecharan from testifying, providing documents or information, advising, counseling or providing any other form of assistance to any person who wishes to make or who is making any claim against Releasees, unless he is subpoenaed to do so or in an investigation or proceeding conducted by the U.S. Equal Employment Opportunity Commission, the U.S. Department of Labor, the New York State Department of Labor, or any other agency of the United States government, by order of a court of competent jurisdiction, or if otherwise prohibited by law. Seecharan will not disclose confidential information covered by the terms of this Negotiated Settlement Agreement without being directed to do so by lawful subpoena or court order. If Seecharan is served with a subpoena or court order requiring disclosure of information made confidential pursuant to this Agreement, he will immediately notify The Company's legal counsel, Michael A. Jakowsky, Esq., Jackson Lewis P.C. Such notice shall be provided by Seecharan in writing to The Company's counsel within three (3) business days, so that The Company's counsel and/or the Releasees may take any action they deem appropriate regarding the subpoena or court order;

(g) Seecharan understands and agrees that the Settlement Amount (described in Paragraph "2" below) is in full satisfaction of and exceeds any and all obligations The Company is required to pay his under its benefit plans, policies and procedures. None of the payments described in this Agreement shall be subject to matching contributions or included as benefits eligible earnings under any Company benefit plan or policy; and

(h) Seecharan understands that he is not eligible for employment, reinstatement, or reemployment with The Company and agrees that he will not seek employment,

3

reinstatement, or reemployment with The Company on any basis at any time in the future. Seecharan further understands that he is not eligible for contractual work from The Company, and agrees that he will not seek any work from The Company as an independent contractor, or on any other contractual basis, at any time in the future. Seecharan agrees that if he violates any provision of this Paragraph, The Company will have the unfettered right to reject Seecharan's application for employment, reinstatement, reemployment or contractual work immediately and summarily.

2. In exchange for the promises made by Seecharan contained in Paragraph "1" above, in the General Release attached hereto as Exhibit "A," and in the other provisions of this Agreement, The Company agrees to pay Seecharan a total of <u>Eighty-Five Thousand</u> Dollars and <u>No</u> Cents ($85,000) ("the Settlement Amount") in consideration for and in full satisfaction of all claims Seecharan has or may have against The Company or any other Releasees, whether known or unknown, asserted or unasserted. The Settlement Amount will be paid in two (2) installments as follows:

(a) The "First Installment", in the amount of <u>Twenty-Eight Thousand Three Hundred Thirty-Three</u> Dollars and <u>Thirty-Three</u> Cents ($28,333.33), shall be made payable to "Jonathan Silver, Esq. as attorney" and shall be transmitted to Seechran by his Counsel, apportioned as payment for alleged damages other than wages or benefits, for which an IRS form 1099 will be issued to Jonathan Silver Esq. who will be required to provide a completed W-9 form as a condition of receiving payment under this Agreement. The First Installment will be sent to Seecharan's counsel within thirty (30) calendar days after the Company receives a fully signed Agreement from Seecharan and return to Seecharan of a fully executed agreement by the Company and delivery of the letter of recommendation provided Seecharan has not revoked his acceptance of this Agreement and the attached General Release as provided for herein; and

(b) The "Second Installment", in the amount of <u>Fifty-Six Thousand Six Hundred Sixty-Six</u> Dollars and <u>Sixty-Seven</u> Cents ($56,666.67), shall be made payable to **(same as above)**"Jonathan Silver, Esq." and shall be transmitted to Seecharan by his Counsel, apportioned as payment for alleged damages other than wages or benefits, for which an IRS form 1099 will be issued. The Second Installment will be sent to Seecharan's counsel within ten (10) calendar days after Seecharan vacates the Apartment as set forth in Section 4 below. In the event Seecharan fails to vacate the Apartment on or before the date set forth in Section 4 below, The Company may defer payment to Seecharan of the Second Installment until he vacates the Apartment and reduce the

settlement amount on a prorated basis for rent due for failing to vacate within the allotted time set forth in Section 4 below (established as $2,316.54 per month).

3. Seecharan understands and agrees that he is responsible for payment of any taxes that may be due and owing on the Settlement Amount, and agrees to indemnify and to hold harmless The Company from any and all actions, claims or demands brought by any tax or other authority based on Seecharan's tax obligations arising from the payment of the Settlement Amount. Seecharan also understands that the Settlement Amount set forth in Section 2 above may be reduced to the extent additional monies are required by the Court to be allocated towards the resolution of the wage claims asserted in the Litigation. To the extent such a reduction is made, Seecharan understands that he shall not be entitled to more than a total of $95,000 in remuneration under either this Agreement or the Negotiated Settlement Agreement related to his wage claims.

4. Seecharan presently resides in an apartment located at 88-25 148th St., Apt. 2k, Jamaica, New York 11435 (the "Apartment"). The Company agrees that Seecharan may continue to utilize the Apartment for a period of sixty (60) days following the Company's receipt of a fully signed Agreement from Seecharan and return to Seecharan of a fully executed agreement by the Company and delivery of the letter of recommendation provided Seecharan has not revoked his acceptance of this Agreement and the attached General Release as provided for herein (the "Vacate Date"). Seecharan will remit no payment to The Company for continued use of the Apartment but will retain current rights and status as a resident of the building until the Vacate Date. Seecharan's occupation of the Apartment for a sixty (60) day period following Seecharan's execution and non-revocation of this Agreement shall have whatever income tax consequences to Seecharan as may be appropriate.

(a) Seecharan agrees that he will vacate the Apartment and remove all belongings from The Company's premises on or by the Vacate Date. Seecharan agrees he will leave the Apartment in broom clean condition, and leave all attached fixtures, including lighting fixtures, switches, light plates, door hardware, appliances, built-ins, cabinetry and improvements, removing nothing other than window treatments, and detached personal property, including furniture. At the time Seecharan vacates the Apartment, he will return his keys to the Apartment, his mailbox key, and any other keys remaining in his possession to The Company. The Company will be permitted to photograph the Apartment in Seecharan's presence to verify the current condition of the Apartment prior to the Vacate Date.

(b) The Company represents that it has the authority to waive and agrees on behalf of Belair Park 8825 LLC, to waive any and all past due and future rent payments due and owing by Seecharan arising from Seecharan's residing within the Apartment from the date of Seecharan's termination through the Vacate Date.

5. Seecharan hereby agrees and acknowledges that this Negotiated Settlement Agreement is a "no fault" settlement, and that nothing contained herein (or in the attachments to this document) shall constitute or be treated as an admission of any liability or wrongdoing by Releasees. Seecharan further understands and agrees that he would not be entitled to receive the monies specified in Paragraph "2" above, except for his execution of this Negotiated Settlement Agreement and the General Release attached hereto as Exhibit "A", and his fulfillment of all the promises contained herein and in the General Release.

6. Pursuant to the Nondisclosure Agreement attached hereto as Exhibit "B", this Agreement shall not be filed with a Court unless necessary to obtain Court approval of the wage and other claims pending before the Court and shall remain forever confidential. This Agreement may not be introduced in any proceeding, except as provided herein or to establish conclusively the settlement and release of the matters described herein or a breach of this Agreement. Seecharan understands and agrees that a violation of this Paragraph will constitute a material breach of this Agreement which will cause The Company to suffer immediate, substantial and irreparable injury. (OMIT and which will be a sufficient basis for a Court to award injunctive relief or monetary damages to The Company without affecting the remainder of this Agreement.)

7. The Parties shall bear their own attorneys' fees, costs and disbursements, except as provided herein.

8. This Agreement and Seecharan's General Release attached hereto as Exhibit "A", and the Nondisclosure Agreement attached hereto as Exhibit "B", shall be governed and conformed in accordance with the laws of the State of New York, without regard to the State's conflict of laws provisions or any federal common law conflict of laws principles. The Parties expressly consent that any action or proceeding relating to the enforcement of this Agreement and/or Seecharan's General Release attached hereto as Exhibit "A", and the Nondisclosure Agreement attached hereto as Exhibit "B", will only be brought in a court located in the State of New York, and that any such action or proceeding will be heard without a jury or an advisory jury. The Parties expressly waive their right to bring any such action or proceeding in any other

jurisdiction, or to have any such action or proceeding heard before a jury or an advisory jury. Should any provision of this Negotiated Settlement Agreement and/or the General Release be declared illegal or unenforceable by any court of competent jurisdiction, and such provision cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Negotiated Settlement Agreement and the General Release in full force and effect.

    9. This Negotiated Settlement Agreement may not be modified, altered or changed, except upon express written consent of all parties.

    10. This Negotiated Settlement Agreement, including Seecharan's General Release attached hereto as Exhibit "A" and the Nondisclosure Agreement attached hereto as Exhibit "B", sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between Seecharan and The Company, other than the Negotiated Settlement Agreement concerning Seecharan's wage claims, which shall remain in full force and effect. Seecharan acknowledges he has not relied on any representations, promises or agreements of any kind made to him in connection with his decision to sign this Negotiated Settlement Agreement, except for those set forth in this Negotiated Settlement Agreement.

    11. Each of the Parties has participated in negotiating and drafting this Agreement and Seecharan's General Release attached hereto as Exhibit "A", and the Nondisclosure Agreement attached hereto as Exhibit "B", after consulting with legal counsel. Accordingly, no Party shall maintain that the language of this Agreement and/or Seecharan's General Release attached hereto as Exhibit "A", and/or the Nondisclosure Agreement attached hereto as Exhibit "B", should be construed in any way by reason of the other Party's putative role as the drafter of any of these documents. For example, no ambiguity in any of these documents, if any, shall be construed against any Party based upon any claim that any Party drafted the ambiguous language.

    12. Seecharan may revoke this Negotiated Settlement Agreement for a period of seven (7) calendar days following the day Seecharan signs this Negotiated Settlement Agreement and General Release. Any revocation within this period must be submitted, in writing, to Michael A. Jakowsky and state, "I hereby revoke my acceptance of our Negotiated Settlement Agreement." The revocation must be personally delivered to Michael A. Jakowsky or his designee, and postmarked within seven (7) calendar days after Seecharan signs this Negotiated Settlement

Agreement and General Release. If the last day of the revocation period is a Saturday, Sunday or legal holiday in the state in which Seecharan was employed at the time of his last day of employment, then the revocation period shall not expire until the next following day which is not a Saturday, Sunday or legal holiday. This Negotiated Settlement Agreement and General Release shall not become effective or enforceable until the revocation period has expired.

**SEECHARAN HEREBY CONFIRMS THAT HE HAS BEEN AFFORDED TWENTY-ONE (21) DAYS TO CONSIDER THIS NEGOTIATED SETTLEMENT AGREEMENT AND THE GENERAL RELEASE ATTACHED HERETO AS *EXHIBIT A* AND HE HAS CONSULTED WITH COUNSEL OF HIS CHOOSING REGARDING THIS NEGOTIATED SETTLEMENT AGREEMENT AND THE GENERAL RELEASE.**

**SEECHARAN AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT AND THE GENERAL RELEASE, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAYS CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS NEGOTIATED SETTLEMENT AGREEMENT AND THE GENERAL RELEASE ATTACHED HERETO AS *EXHIBIT A* TO FULFILL THE PROMISES SET FORTH HEREIN THAT PERTAIN TO HIS AND TO RECEIVE THEREBY THE CONSIDERATION SET FORTH IN PARAGRAPH "2" ABOVE, SEECHARAN FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH COUNSEL, VOLUNTARILY ENTERS INTO THIS NEGOTIATED SETTLEMENT AGREEMENT AND THE ACCOMPANYING GENERAL RELEASE.**

**IN WITNESS WHEREOF,** the undersigned Parties hereto knowingly and voluntarily executed this Negotiated Settlement Agreement as of the dates set forth below:

*EMPLOYEE*

_____     _____
Date                                                          Ramsaran Seecharan

*HERITAGE PLACE LLC*

                                                       By: _____
_____
Date

9

# EXHIBIT A

## **GENERAL RELEASE**

TO ALL IN WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, KNOW THAT RAMSARAN SEECHARAN, AS RELEASOR, in consideration of the promises made by Heritage Place LLC ("The Company"), as well as any of the aforementioned entities' or individual's parent corporations, subsidiaries, divisions, affiliates and insurers, and the current and former employees, officers, directors, trustees, administrators, executors, agents, legal representatives, employee benefit plans, fiduciaries, shareholders, predecessors, successors and assigns of each, both individually and in their official capacities (collectively referred to herein as "RELEASEES"), to provide RELEASOR, through his counsel, with the Settlement Amount and other articulated consideration, in the manner and within the time periods described in Paragraph "2" of the Parties' Negotiated Settlement Agreement in return for RELEASOR'S complete release of all statutory, contract, tort and all other claims against RELEASEES; RELEASOR releases and forever discharges RELEASEES to the fullest extent permitted by law from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, obligations, grievances, claims, charges, complaints, claims for attorneys' fees and/or costs, and demands whatsoever, in law or in equity, known or unknown, which RELEASOR, RELEASOR'S heirs, executors, administrators, successors and/or assigns may now have or hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever against RELEASEES based upon any conduct occurring from the beginning of the world up to and including the day of the date of this GENERAL RELEASE including, but not limited to: any claims arising under or pursuant to the United States Constitution, the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988, the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., the Equal Pay Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161 et seq., I.R.C. § 4980B, the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq., the False Claims Act, 31 U.S.C. § 3729 et seq., the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et

seq., the New York State Constitution, the New York Human Rights Law, New York Executive Law § 290 et seq., the New York Civil Rights Law, New York Civil Rights Law § 1 et seq., the New York Equal Pay Law, New York Labor Law §§ 194-198, the New York Whistleblower Law, New York Labor Law § 740 et seq., the New York Legal Activities Law, New York Labor Law § 201-d, the non-discrimination and/or anti-retaliation provisions of the New York Workers' Compensation Law, New York Workers' Compensation Law § 120 and § 125 et seq., New York Labor Law § 190 et seq., the New York occupational safety and health laws, the New York wage-hour and wage-payment laws, and/or any other federal, state, city, local or other human rights, civil rights, wage-hour, wage-payment, immigration, pension, employee benefits, labor, employment or other laws, rules, regulations, codes, guidelines, constitutions, ordinances, public policy, contract laws or tort laws; any claim for employment discrimination, harassment, retaliation, wrongful termination, constructive discharge, refusal to hire, pain and suffering, mental anguish, breach of contract (whether or written, express or implied), promissory estoppel, lost wages and/or incentive compensation, lost employee benefits, lost future wages and/or incentive compensation, lost future employee benefits, compensatory damages, liquidated damages, punitive damages, incidental damages, special damages, interest, attorneys' fees and/or costs; any claim arising under the common law; and/or any other action or proceeding; and shall not seek or accept any award or settlement from any such source or proceeding. However, nothing in this GENERAL RELEASE will prohibit RELEASOR from instituting legal proceedings to enforce the terms of the Parties' Negotiated Settlement Agreement. RELEASOR understands this General Release includes all claims related in any manner to RELEASOR's employment or the cessation of that employment with The Company. If any claim is not subject to release, to the extent permitted by law, RELEASOR waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which The Company or any other Releasee identified in this General Release is a party.

      Having elected to execute the Negotiated Settlement Agreement and this General Release, to fulfill the promises set forth therein that pertain to RELEASOR, and to receive thereby the consideration set forth therein, RELEASOR freely and knowingly, and after due consideration and consultation with his counsel voluntarily enters into this General Release, intending to waive, settle and release any and all claims RELEASOR has or might have against RELEASEES.

This GENERAL RELEASE may only be changed by the mutual written agreement of RELEASOR and The Company.

In Witness Whereof, RELEASOR has hereunto set his hand on the date set forth below:

_____
Ramsaran Seecharan

# EXHIBIT B

4

## **NONDISCLOSURE AGREEMENT**

Ramsaran Seecharan ("Seecharan") alleges claims of discrimination against Heritage Place LLC (the "Company", collectively the "Parties"). The Parties intend to enter into a Settlement Agreement and General Release ("Settlement Agreement") to resolve Seecharan's allegations emanating from the litigation filed in the United States District Court for the Eastern District of New York, Case No. 1:20-cv-03898-WFK-LB (the "Litigation"). Seecharan prefers that as part of that Settlement Agreement, the underlying facts and circumstances leading up to or the existence or substance of the Settlement Agreement, including the settlement sum, not be disclosed. Pursuant to General Obligations Law § 5-336, this Nondisclosure Agreement is entered into on the following terms:

1. The Parties agree that they are entering into this Nondisclosure Agreement willingly, without any coercion or duress.

2. Prior to signing this Nondisclosure Agreement, Seecharan has considered the term or condition of nondisclosure of the underlying facts and circumstances of the allegations of discrimination for at least 21 days, and such term or condition is Seecharan's preference.

3. For a period of seven days following the execution of this Nondisclosure Agreement, Seecharan may revoke this Nondisclosure Agreement, and the Nondisclosure Agreement shall not become effective or be enforceable until such revocation period has expired. Seecharan may revoke this Nondisclosure Agreement by signing the revocation clause found below, and delivering it promptly to The Company, through its counsel.

4. The Settlement Agreement that may be entered into, following the end of the revocation period of seven days after the execution of this Nondisclosure Agreement, shall incorporate this Nondisclosure Agreement by reference, unless this Nondisclosure Agreement has been revoked.

5. Seecharan agrees not to disclose, publish, or publicize any information relating to the underlying facts and circumstances leading up to or the existence or substance of this Nondisclosure Agreement or Settlement Agreement, including the settlement sum, or any information relating to or arising from Seecharan's employment with The Company, including but not limited to any information regarding any current or former employees of The Company, as well as allegations of discrimination, and promises that neither he nor his representatives will disclose, publish, or publicize, either directly or indirectly, any such information to anyone,

1

including but not limited to past, present, or future employees of The Company or to any person, firm, organization or entity of any and every type, public or private, or on any internet website, with the exception that disclosure is permitted to his spouse, attorney, accountant, or medical or counseling professionals, or as otherwise required by law.

6. A facsimile or electronic copy of this agreement will have the same force and effect as the original.

7. This agreement may be signed in counterparts.

8. By signing below, the signatory for The Company warrants and represents that they have the authority to sign on behalf of and to bind The Company to the terms and conditions of this Nondisclosure Agreement, to agree to all of the terms and conditions of this Nondisclsoure Agreement on behalf of The Company, and to ensure that The Company fulfills all of the terms and conditions set forth herein.

The subscribing parties hereby agree to the above terms.

_____     _____
Date                RAMSARAN SEECHARAN

_____     _____
Date                HERITAGE PLACE LLC

**Seven Day Revocation Option:**

I, Ramsaran Seecharan, exercise my right under paragraph 3, above, to revoke this Nondisclosure Agreement. I understand that by my signature below, this Nondisclosure Agreement is rendered null and void, and that a clause requiring the parties not to disclose the underlying facts and circumstances of my claims of discrimination cannot be included in any subsequent settlement of this matter.

_____     _____
Date                Ramsaran Seecharan